**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

TALAL MOHAMMAD ABBAAS ALSMADI,

Petitioner,

v.

MARKWAYNE MULLIN, et al.,

Respondents.

Case No. EDCV 26-3133-PVC

**MEMORANDUM DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## I.

## INTRODUCTION AND BACKGROUND

On June 8, 2026, Petitioner ("Petitioner"), an immigrant detainee and citizen of Jordan who had been in immigration custody since May 2026, represented by counsel, filed a Petition for Writ of Habeas Corpus by a Person in Federal Custody Under 28 U.S.C. § 2241 (the "Petition"). (Dkt. No. 1.) The Petition challenged Petitioner's re-detention by immigration authorities pending removal from the United States. (*Id.*) Petitioner alleges that he first entered the United States in or about 2021, was detained by ICE, and "then released after approximately a month." (*Id.* at 2). "He was allowed to reside in the United States and referred to the

Immigration Courts." (*Id.*). He appeared for all of his immigration court hearings and complied with all requirements set by ICE. (*Id.*). He was re-detained after being involved in a car accident on May 14, 2026. (*Id.*).

Petitioner alleges that his re-detention violates his rights under the Fifth Amendment (*id.* at 14–18), Immigration and Nationality Act ("INA") (*id.* at 23–24), and the Administrative Procedure Act (*id.* at 24–25). The Petition requested immediate release, or alternatively, an individualized bond hearing. (*Id.* at 27).

Respondents filed their Answer on June 15, 2026 ("Answer"). (Dkt. No. 8). The Answer conceded that Petitioner was eligible for a bond hearing. (*Id.* at 2). On June 16, 2026, the Court ordered Respondents, within seven days, to release Petitioner or provide him with an individualized bond hearing under 8 U.S.C. § 1226(a). (Dkt. No. 9).

On June 23, 2026, Respondents filed a Notice of Compliance, informing the Court that on that date, Petitioner received an individualized bond hearing under 8 U.S.C. § 1226(a), after which Petitioner's request for a bond was denied. (Dkt. No. 10 at 2). Respondents attached a copy of the Order of the Immigration Judge, which stated that Petitioner's request for bond was denied because:

> IN RE TRO BOND: The Court finds, by clear and convincing evidence, that [Petitioner] is a danger such that no bond is appropriate. As such, bond is denied.
>
> On May 14, 2026, the [Petitioner] was involved in an auto accident. In the backseat of his vehicle, he had a bag that contained a firearm. [Petitioner] contends it wasn't loaded, but the charge say [sic] otherwise. [Petitioner] was charged with one count of carrying a loaded firearm. The charge has been "rejected" by the District Attorney but the reason(s) are unclear.

[Petitioner] testified that he obtained the firearm from a "customer" at the store he worked. He interacted with this customer on 2-3 occasions. [Petitioner], who had previously witnessed a murder, testified at a preliminary hearing in the criminal action against the alleged murderer. This is certainly commendable on [Petitioner's] part. After his testimony, [Petitioner] was allegedly approached on several occasions, at multiple locations, and verbally threatened by an unknown individual with threats such as "your life is in danger." The customer allegedly heard one of those threats and offered to sell [Petitioner] a firearm. The customer then sold [Petitioner] the firearm for $200. [Petitioner's] counsel argued, without evidence, the firearm was not "lethal", but counsel's arguments are not evidence. [Petitioner] was unable to state the type of firearm, but acknowledged he knew it was wrong to buy a gun in this fashion.

While [Petitioner's] purported reason in purchasing the gun - for self protection - is certainly valid, his method of obtaining the gun is most certainly not. Purchasing a firearm in this fashion, which [Petitioner] acknowledged had no serial number, is a crime. Carrying this firearm is also a crime. He was charged with the latter crime, but charges were rejected for unknown reasons. Regardless, the fact that [Petitioner] would purchase a gun in this fashion and the fact he even interacts with the type of people who would sell firearms to strangers demonstrates danger. [Petitioner] did have other alternatives, such as contacting the police about the threats. It was argued that the police simply ignored his inquiries about the threats, but this does not sound plausible that the police would simply ignore threats against a testifying witness.

The Court is also troubled by the manner in which [Petitioner] transported the weapon. Keeping the weapon in a bag in his backseat demonstrates further danger. This demonstrates either [Petitioner] would carry around the weapon on his person without a permit, which is illegal, and/or he would carry about a bag in public containing a weapon, and/or he would leave the weapon in the bag inside his car for anyone to steal when he was not inside the vehicle. Under any scenario, this demonstrates a further danger to the public at large.

Overall, while [Petitioner] is certainly to be commended for stepping up and testifying in the criminal action, his reaction to alleged threats against his safety demonstrate a danger. He is a danger to others as demonstrated by his illegal purchase and transportation of a firearm, and others being in his presence will be exposed to that danger if he is

> released. This is especially true if threats are being made against his person, and others nearby would be exposed. As such, no bond is appropriate.

(Dkt. No. 10-1 at 1–2).

On June 30, 2026, Plaintiff's counsel filed a Status Report and Motion to Dismiss, informing the Court that Petitioner was provided a bond hearing, and stating, "Petitioner believes there the originally filed writ of habeas and the subsequent order has been complied with. Petitioner moves to dismiss the petition." (Dkt. No. 11 at 2).

On July 29, 2026, Petitioner filed pro se an Emergency Ex Parte Motion to Enforce Judgment and for Immediate Release. (Dkt. No. 12). Despite Petitioner's counsel's representation to the Court and the Immigration Judge's Order attached to Respondents' Notice of Compliance, which indicates that Petitioner himself testified at the June 23, 2026 bond hearing, Petitioner argued that Respondents "have not provided the ordered bond hearing." (*Id.* at 2).

On July 29, 2026, the Clerk issued a Notice to Filer of Deficiencies, informing Petitioner that "[w]henever a party has appeared by an attorney, the party may not thereafter appear or act pro se, except upon order made by the Court after notice to such attorney and to any other parties." (Dkt. No. 13). On August 21, 2026, Petitioner, again acting pro se, filed a Notice of Substitution of Attorney Pro Se, purporting to substitute himself for his attorney of record. (Dkt. No. 14).

On October 7, 2026, Petitioner filed a Request for a Status Conference Regarding Pending Emergency Motion to Enforce Judgment. (Dkt. No. 15).

For the reasons state herein, Petitioner received adequate due process, and the Petition is DENIED.

## II.
## DISCUSSION

On June 23, 2026, Petitioner received a custody redetermination hearing. (Dkt. No. 10-1). At that hearing the Immigration Judge found "by clear and convincing evidence, that [Petitioner] is a danger such that no bond is appropriate." (*Id.* at 1).

The decision to release Petitioner from custody in 2021 arguably created a protected liberty interest in remaining out of custody. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). To determine what procedures are constitutionally sufficient to protect Petitioner's liberty interest in remaining out of custody, courts consider three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, Petitioner has received post-detention process, including a bond hearing before an Immigration Judge on June 23, 2026. (Dkt. No. 10-1). Although Petitioner had a private interest in remaining out of custody, the risk of erroneous deprivation is low because Petitioner has been afforded a bond hearing before a neutral immigration judge—more process than in other cases in which courts have granted relief. And the IJ found after that hearing by clear and convincing evidence that Petitioner is a danger such that no bond is appropriate. (*Id.* at 1).

Moreover, the Immigration Judge gave legally sufficient reasons for finding that Petitioner would pose a danger to the community. Specifically, the IJ noted that Petitioner "had a bag that contained a firearm" in the backseat of his vehicle. (*Id.*). The IJ also noted that the charge said the firearm was loaded. (*Id.*). The IJ also noted that Petitioner testified that he obtained the firearm from a "customer" at the store he worked, that Petitioner "acknowledged he knew it was wrong to buy a gun in this fashion," and "acknowledged [the gun] had no serial number," which is a crime. (*Id.* at 1–2).

The IJ also acknowledged that Petitioner purchased the firearm for protection after being threatened but found that the manner in which Petitioner purchased and transported the firearm "demonstrates a . . . danger to the public at large." (*Id.* at 2). The Court found that "others being in his presence will be exposed to that danger if her is released." (*Id.*).

Therefore, the value of additional or substitute procedural safeguards is minimal. Petitioner has already had a bond hearing. Any additional bond hearing would be merely duplicative. Finally, the Government has a strong interest in enforcing its immigration laws. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189,

1208 (9th Cir. 2022). Therefore, Petitioner has received sufficient due process to protect his liberty interest.

Petitioner's sole argument is that he did not receive a bond hearing. (Dkt. No. 12 at 2). But both the IJ's order submitted by Respondents and Petitioner's own counsel's representations, demonstrate otherwise.

## III.
## CONCLUSION

IT IS THEREFORE ORDERED THAT the Petition is DENIED, Judgment be entered in favor of Respondents, and all pending motions be denied as moot.

DATED: October 14, 2026

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE